UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL HUTCHISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01285-JRS-MJD |
| | ) | |
| RYAN NEEDHAM, | ) | |
| LONNIE JONES, | ) | |
| DANNY EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| DANNY EDWARDS, | ) | |
| RYAN NEEDHAM, | ) | |
| LONNIE JONES, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, INC., | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**ORDER DENYING THIRD PARTY DEFENDANT
ADVANCED CORRECTIONAL HEALTHCARE, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Hutchison alleges that he was not provided his medications while incarcerated as a pre-trial detainee at the Montgomery County Jail (Jail) in violation of his Fourteenth Amendment rights. Dkt. 32. Mr. Hutchison's claims proceed against Jail Commander Lonnie Jones and Deputy Danny Edward's in their individual capacities, and a policy claim proceeds against Sheriff Ryan Needham, in his official capacity. Dkt. 104 at 11; *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Sheriff Ryan Needham, Jail

1

Commander Lonnie Jones, and Deputy Danny Edwards (hereinafter the "County") filed a third-party complaint asserting that third-party defendant Advanced Correctional Healthcare, Inc., ("ACH") is responsible for medical care at the Jail and that its contract with the Jail provides that it will defend and indemnify them from Plaintiff Hutchison's claims. Dkt. 40. Now before the Court is ACH's motion for summary judgment. ACH seeks summary judgment arguing in relevant part that it did not breach the Health Services Agreement by (1) failing to provide medical services to Mr. Hutchison while he was incarcerated at the Jail between March 1, 2018, and April 3, 2018, and by (2) failing to indemnify and defend the County in this action. *See* dkt. 43 (the two claims set forth in third-party complaint).

For the reasons explained in this Order, ACH's motion for summary judgment, dkt. [92], is **DENIED**.

### I. Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. Preliminary Matters

As a preliminary matter, the Court addresses the briefing on ACH's motion for summary judgment, dkt. 92. The County filed its response in opposition, dkt. 108, ACH filed a reply, dkt. 130, and the County was permitted to file a surreply, dkt. 142. The Court has considered all of these filings in its analysis on the merits of ACH's motion. But the Court will not consider Plaintiff Hutchison's response to ACH's motion for summary judgment. This is because ACH seeks resolution of the County's claims against it through its summary judgment motion, and thus, the dispute before the Court is between ACH and the County, and these parties only. Plaintiff Hutchison asserted no direct claims against ACH, and, the Court identified no such claims when screening the complaint. Dkt. 36. Plaintiff Hutchison did not further amend his pleading to include direct claims against ACH or any of its medical employees. Plaintiff Hutchison cannot now interject himself into a dispute he is not part of, involving claims he did not raise. Accordingly, the

3

Court **disregards** Plaintiff Hutchison's response in opposition, dkt. 122, and the corresponding designated evidence, dkt. 123.

### III. Material Facts

Because the third-party defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

#### A. Contractual Relationship

"ACH is a company that contracts with sheriff's departments to provide physicians and nurses for county jails throughout Indiana and other states." Dkt. 93-1, ¶ 2 (Vice President of ACH Affidavit). Between March 1, 2018, and April 3, 2018, the period relevant to Plaintiff Hutchison's claims, ACH contracted with the Montgomery County Sheriff "to provide a physician and nurses" to the Jail. *Id.*

During the relevant period, Dr. Silbert worked for ACH as the primary care doctor at the Jail. *Id.* Dr. Silbert, or another ACH provider, if necessary, "was contracted to physically visit the jail one day per week for a set number of hours," and the nursing staff kept regular hours at the Jail. *Id.* When treatment from the physician was necessary but one was not on-site, the nursing or jail staff could call the doctor, who was on-call 24 hours, 7 days a week, or inmates could be sent for off-site treatment if necessary. *Id.*

ACH expects its physicians, like Dr. Silbert, to treat patients based upon their objective medical condition, their subjective needs, and the doctor's medical judgment. *Id.*, ¶ 3. ACH has no "policies, protocols, or procedures that dictate to its physicians how to treat patients," rather it is ACH's expectation that its doctors are "to provide whatever medical treatment the physician feels

4

is necessary and appropriate based on the specific circumstances and based on that physician's own medical judgment." *Id.*

There is no ACH policy that prevents any specific type of treatment or medication; prevents an inmate from receiving medication; prevents an inmate from being prescribed a medication if it is not on his person and in his possession when being booked into the Jail; denies an inmate medication because he cannot afford it; or that refuses an inmate medical care based on any inability to pay. *Id.*, ¶¶ 4-7. When booked into the Jail, if an inmate reports he is currently on medication, "one of the nurses typically will contact the pharmacy and verify that the inmate has a current prescription for the medication, the dosage prescribed, and the number of refills remaining." *Id.*, ¶ 4. The nurse gives this information to the on-site physician who must approve it, and then it will be ordered through the Jail pharmacy. *Id.* If an inmate's medication is in his possession or brought to the Jail by someone else, it is "typically given to a nurse," who will contact the doctor for further approval. *Id.*

Finally, "[j]ail staff does not dictate whether or not a physician can prescribe certain medications," and if there is concern from Jail staff related to drug abuse or trafficking, "they can relay their concerns to the medical staff." *Id.*, ¶ 6. In sum, it is the physician who prescribes what medication or treatment he or she believes is medically necessary and appropriate in his or her medical judgment. *Id.*, ¶¶ 4, 6.

**B. Health Services Agreement**

ACH and the Jail entered into a Health Services Agreement in July 2003. Dkt. 128-2. The scope of services, Section 1.1.1, in relevant part, states that "ACH shall provide professional on-site Physician/Nurse Practitioner coverage as needed; payment for pharmaceuticals, including prescription medications and over-the-counter medications, . . . disposable medical supplies

intended for one time use, . . .; [and] appropriate on-site laboratory tests and diagnostic x-rays." *Id.* at 2.

Section 5.3.8 provides that the agreement "shall be governed by the laws of the State of Indiana." *Id.* at 9.

In 2015, the Health Services Agreement was amended to include several new sections that are relevant to the parties' contractual dispute. The Court quotes from these provisions below:

**5.3.10 HOLD HARMLESS AND INDEMNIFY.**

> 5.3.10.1 **ACH will hold harmless and indemnify the COUNTY, SHERIFF, and FACILITY (together with their respective employees) against any loss or damage, including reasonable attorneys' fees and other costs of litigation, caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of ACH or its employees, which is related to medical treatment or care provided by ACH.** With respect to any claim for indemnification, the party claiming a right to indemnify will (i) give written notice therefore to ACH within a reasonable period following the event or occurrence as to which the right to indemnification is or may be asserted and (ii) allow ACH (including the employees, agents, and counsel) reasonable access to any of its employees property, and records for the purposes of conducting an investigation of such claim and for the purpose of obtaining statements, photographs, and taking such other steps as may be necessary to preserve evidence of the occurrence on which the claim is based. If the party claiming a right to indemnity denies ACH reasonable access as set forth, after written request therefore, the party claiming a right to indemnity will assume sole responsibility for the claim for which indemnification is sought and will not be entitled to indemnity.

> 5.3.10.2 The COUNTY will hold harmless ACH (and its employees) against any loss or damage, including reasonable attorneys' fees and other costs of litigation, caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of the COUNTY or its employees, which is related to medical treatment or care provided by ACH.

**5.3.11 INSURANCE.**

> 5.3.11.3 **ACH will maintain professional liability insurance, including civil rights liability** . . . .

> 5.3.11.5 ADDITIONAL INSUREDS. **ACH will name the SHERIFF and the COUNTY as an additional insured under the commercial automobile, commercial general and professional liability portions of insurance** and provide

6

the COUNTY with a Certificate of Insurance specific to correctional facilities evidencing the terms of the insurance coverage and policy limits.

*Id.* at 18-19 (emphasis added).

### C. Plaintiff Hutchison's Amended Complaint and Claims

Plaintiff Hutchison's amended complaint named only Jail staff and the Sheriff. Dkt. 32. Plaintiff Hutchison alleges that he was incarcerated at the Jail from December 17, 2017, to April 3, 2018,[1] and that he suffered from "seizure disorder, extreme hypertension, anxiety and depression . . . among other serious medical conditions," and the Sheriff and his agents were aware of these conditions and of Plaintiff Hutchison's need for his currently prescribed medications. *Id.* at 2.

Plaintiff Hutchison was taken from the Jail to the emergency room on March 1, 2018. *Id.* at 3. He was sent back to the Jail with a prescription for blood pressure medication but alleges that the nurse, a non-party, and Jail Commander Lonnie Jones and Deputy Danny Edward, told him that he would not receive his medications "because it was the policy of the jail to not dispense medications to prisoners." *Id.* at 4. He alleges he did not receive medications from this point through his release date of April 3, 2018, and then six days later, had to be taken to the hospital for treatment because of his lack of medication. *Id.* at 4-5. Plaintiff Hutchison alleges "[t]hat the deliberate indifference of the Montgomery County Sheriff and his agents at the Montgomery County Jail . . . [were] the cause of [his] deteriorating health since he was a detainee at the jail." *Id.* at 5.

The Court screened Plaintiff Hutchison's amended complaint and permitted Fourteenth Amendment claims to proceed against Jail Commander Lonnie Jones and Deputy Danny Edwards

---

[1] On October 19, 2020, the Court granted in part the County's motion to dismiss, and Plaintiff Hutchison's claims from December 17, 2017, to March 1, 2018, were barred by the applicable two-year statute of limitations. *See* dkt. 31 at 8.

in their individual capacities and a policy claim against Sheriff Needham in his official capacity based on a Jail policy that medications were not given to inmates. Dkt. 36; dkt. 104.

## IV. Discussion

ACH seeks summary judgment arguing in relevant part that it did not breach the Health Services Agreement by (1) failing to provide medical services to Plaintiff Hutchison while he was incarcerated at the Jail between March 1, 2018, and April 3, 2018, and by (2) failing to indemnify and defend the County in this action. *See* dkt. 43.

### A. Legal Standard

The Health Services Agreement provides that it "shall be governed by the laws of the State of Indiana." Dkt. 128-2 at 9. Under Indiana law, a breach of contract claim requires showing: "(1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *See Alliance Tank Serv., LLC v. Great Am. Ins. Co.*, 2021 WL 5415140, at *7 (N.D. Ind. Nov. 19, 2021) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). "When the contract language is clear and unambiguous, it will be given its plain meaning." *Id.* (citing *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002)). If a contract is ambiguous, "it is the responsibility of the jury to ascertain the facts necessary to construe the contract." *Secura Supreme Ins. Co. v. Johnson*, 51 N.E.3d 356, 359 (Ind. Ct. App. 2016).

### B. Failure to Provide Medical Services

ACH concedes that the first element to establish a breach of contract claim has been met because a valid and enforceable agreement between the parties exists. Dkt. 93 at 11. That agreement required ACH to provide, among other things, professional on-site physician coverage as needed and necessary prescriptions and over-the-counter medications. But ACH argues there is no evidence it breached this agreement by failing to provide Plaintiff Hutchison with prescription

medication. *Id.* ACH argues that there is no evidence in the record to show that ACH had a policy to prevent Plaintiff Hutchison from receiving medication, or that he was prevented from receiving medications due to cost, lack of insurance, or failure to have his prescription on him at the time of intake. Rather, whether treatment or medicine was needed was left up to the treating physician's professional medical judgment. Further, the nurse typically took information regarding an inmate's prescription medication which was then provided to the doctor for review and approval. Medical providers were staffed at the Jail in accordance with the Health Services Agreement.

ACH also argues that Plaintiff Hutchison alleges that he believes he was denied medication based on the "Jail's policy," due to a "drug issue at the Jail." Plaintiff Hutchison indeed references his belief that the Jail Commander made the decision according to an established policy at the Jail, or because he had to have the medications in his possession at the time of intake, or because the medications would not be paid for, as evidenced by his amended complaint, his interrogatory responses, and his deposition testimony. *See, e.g.*, dkt. 32; dkt. 93-2 at 2-3, 7; dkt. 93-3 at 19, 22-25, 27, 57. Though Plaintiff Hutchison's amended complaint references the medical staff, he fails to raise any actual claims against them, for example, that their actions were somehow negligent or deliberately indifferent to his medical needs.

Summary judgment is not warranted on the record, however, because Plaintiff Hutchison testified that he informed Jail staff that he was on at least twelve medications upon his intake at the Jail and that information was provided from his off-site doctors to support this medication list, but that he ultimately did not receive any prescription medication. Dkt. 93-3 at 19. Plaintiff Hutchison testified the nurse "had a complete list of [his] medications and how they were to be prescribed." *Id.* at 24. Further, once he returned to the Jail after his emergency room visit on March 1, 2018, for episodes of high blood pressure, he did not receive the Lisinopril prescribed to him by

the emergency room physician, and he testified he was told that he would not receive it. *Id.* at 22-23. Nor did he receive any other medication from this point through his release date on April 3, 2018. *Id.* at 25. Based on these facts, a reasonable jury could conclude that ACH breached its contract with the Jail to provide medical services, including prescription medication. Accordingly, ACH is not entitled to judgment as a matter of law on this claim.

### C. Duty to Defend and Indemnify

Next, ACH argues that the Health Services Agreement does not explicitly obligate ACH to defend or indemnify the County in this action. "Indiana courts permit individual parties, even where they are not an insurance provider, to contract to defend or indemnify against negligent acts committed against another party, and will analyze those agreements using insurance contract principles." *Shaffer v. DeKalb Cty. Sheriff*, 2017 WL 3218112, at *3 (N.D. Ind. July 27, 2017). "The duty to defend is broader than the duty to indemnify." *Id.* (citing *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind. Ct. App. 2006) and *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)). "Whether a party has a duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by that party after reasonable investigation." *Id.* (citing *Trisler*, 575 N.E.2d at 1023).

#### 1. Duty to Defend

ACH argues that the Health Services Agreement, "including the 2015 amendments and its addition to the indemnification clause, is not ambiguous and clearly establishes that ACH owed no duty to defend the Montgomery County Sheriff." Dkt. 93 at 13. ACH states that "Section 5.3.10 of the Agreement makes no reference to such a duty to defend," and "[a]lthough Section 5.3.10.1 in the 2015 amended Agreement adds additional language to the indemnification clause, it still is

10

completely silent as to any such duty to defend." *Id.* Finally, ACH states "the original Agreement provides no such duty[.]" *Id.*

In response, the County argues that when reading the contract as a whole to determine the intent of the parties, the language that ACH holds the County harmless of any loss or damage "including reasonable attorneys' fees" and "other costs of litigation," is comprised of terms that support a duty to defend. Dkt. 108 at 5. Additionally, the County contends that the indemnification clause coupled with the agreement to provide professional liability coverage, including civil rights liability, further establishes ACH's duty to defend. *Id.* at 5-6. The County argues that the professional liability provision, "contemplates a duty to defend against professional liability, as insurance policies usually contain a defense provision . . . . An insurer must defend against any claims that may fall within the coverage of the policy, even if only part of the suit falls within the policy." *Id.* (citing, *e.g.*, *Shaffer*, 2017 WL 3218112, at *3).

It is clear that the parties disagree as to the scope and applicability of terms in the Health Services Agreement. "A contract term is not ambiguous merely because the parties disagree about the term's meaning." *Walker v. Trailer Transit, Inc.*, 1 F.Supp.3d 879, 882 (S.D. Ind. Feb. 14, 2014). "In determining whether the terms of a contract are ambiguous, the Court gives words their usual and common meaning, unless it is clear from the entire contract and its subject matter that another meaning was intended," and if no ambiguity exists, "resolution of [the] issue presents a question of law and the Court will enforce the contract according to its terms." *Id.* at 883.

But, "if reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate." *Id.* at 882 (quoting *McCae Mgmt. Corp. v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 553 N.E.2d 884, 887 (Ind. Ct. App. 1990)). Here, the Court finds that the Health Services Agreement and relevant provisions, read as

11

a whole, are ambiguous as to whether a duty to defend is implicated. Some critical terms, for example, including but not limited to, "additional insureds," the scope of "professional liability insurance," "attorneys' fees and other costs of litigation," are not defined. In addition, the Health Services Agreement indicates ACH maintains professional liability insurance, including civil rights liability, and the Sheriff and the County are included among additional insureds, but the record contains no further information about any specific insurance policies, or their terms and conditions, to determine if a duty to defend is invoked. Such ambiguity here is a latent one, which "rises only upon attempting to implement the contract," and must be determined by the factfinder. *Id.* (quoting *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003)). As the Indiana Supreme Court has stated:

> [W]hile the contract is ambiguous and uncertain in its terms, we believe that the meaning of the contract may well need be determined by extrinsic evidence. As such, its construction is a matter for the factfinder. Rules of contract construction and extrinsic evidence need be employed to determine and give effect to the parties' reasonable expectations. Under such circumstances, resolution of this issue is inappropriate for summary judgment.

*See Cocquyt v. SpartanNash Co.*, 515 F.Supp.3d 969, 976 (N.D. Ind. Jan. 26, 2021) (quoting *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995)).

The Court has identified ambiguity in the terms of the Health Services Agreement that requires consultation of extrinsic evidence to determine if the contract establishes ACH's duty to defend. Such ambiguity leaves material facts in question that preclude summary judgment.

### 2. Duty to Indemnify

ACH argues there is no evidence to conclude that a duty to indemnify has been triggered under the Health Services Agreement, and that if even it has, indemnification is premature. Dkt. 93 at 13; dkt. 130 at 17.

First, the Court is unpersuaded by the argument that indemnification is premature. The indemnification clause includes loss or damage, "including reasonable attorneys' fees and other costs of litigation[.]" Dkt. 128-2 at 18. The County argues it has already incurred attorneys' fees and litigation costs and that Plaintiff Hutchison "need not succeed on his constitutional claims for ACH to be liable to Montgomery County Defendants, [and they] need not wait until they have a paid judgment or settlement to the Plaintiff . . . before they can have an indemnification claim against ACH." Dkt. 142 at 3. The Court agrees.

Because a reasonable jury could find that ACH had a duty to indemnify the County regarding the Plaintiff's lack of receipt of medications at the Jail, ACH is not entitled to summary judgment.

## V. Conclusion

As discussed herein, the Court has identified genuine issues of material fact that preclude summary judgment in favor of Advanced Correctional Healthcare, Inc., and therefore, the third-party defendant's motion for summary judgment, dkt. [92], is **DENIED**.

**IT IS SO ORDERED.**

Date: 09/28/2022

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

James E. Ayers
WERNLE RISTINE & AYERS
ayersj@wralaw.com

Darren Craig Chadd
TAYLOR, CHADD, MINNETTE, SCHNEIDER & CLUTTER, P.C.
dchadd@tcmsclaw.com

Matthew Scott Clark
KNIGHT HOPPE KURNIK & KNIGHT LTD (Rosemont)
mclark@khkklaw.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Daniel Lyn Taylor
TAYLOR CHADD MINNETTE SCHEIDER & CLUTTER PC
dtaylor@tcmsclaw.com

Elizabeth M. Wheaton
KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
elewandowski@khkklaw.com